UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JILL BANKS, an individual, STEVE BANKS, an individual, and the marital community comprised thereof,<br><br>                    Plaintiffs,<br><br>     v.<br><br>YOKE'S FOODS, INC., a Washington corporation, d/b/a Yoke's Fresh Market,<br><br>                    Defendant. | NO:  2:14-CV-0319-TOR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 3).

This matter was heard on December 16, 2014.  Eowen S. Rosentrater appeared on

behalf of Plaintiffs.  Laura J. Black and Michael J. Hines appeared on behalf of

Defendant.  The Court has reviewed the briefing and the record and files herein

and heard from counsel, and is fully informed.

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 1

# BACKGROUND

This case concerns, *inter alia*, disability discrimination arising from Plaintiff Jill Banks' former employment with Defendant Yoke's Food, Inc.  Plaintiffs have asserted claims of disability and age discrimination, interference with medical leave, blacklisting, intentional and negligent infliction of emotional distress, and negligent retention.  In the instant motion, Defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 3.

# FACTS[1]

Jill Banks began working for Yoke's Foods, Inc. ("Yoke's) in 1997. Yoke's initially hired Ms. Banks as an Assistant Deli Manager but eventually promoted her to the position of Corporate Assistant Deli Supervisor in 2002.  Until her termination, Ms. Banks maintained an excellent employment record, was never previously disciplined or written up, and never received negative evaluations.

In 2007, Ms. Banks began experiencing episodes of severe panic and anxiety.  Yoke's granted Ms. Banks leave to seek mental health treatment.  It was at this time that Yoke's became aware of Ms. Banks' medical condition.

In 2008, Yoke's informed Ms. Banks her position as Corporate Assistant Deli Supervisor was "no longer needed."  Subsequently, Yoke's relocated Ms.

_____

[1] The following facts are drawn from Plaintiffs' First Amended Complaint and are accepted as true for purposes of the instant motion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 2

Banks to its North Foothills location and demoted her to the position of Deli Manager.  Ms. Banks believed her anxiety issues were the cause of her demotion.

At Yoke's North Foothills location, Mr. Jeff Weisgerber served as Ms. Banks' manager.  Mr. Weisgerber had "explosive anger outbursts in the workplace, which often include[d] inappropriate language and gestures, swearing, yelling, kicking items down the sales floor in front of employees and customers, punching trashcans, talking negatively about employees, and calling employees names like 'cry baby,' 'clown,' and 'idiot.'"  Mr. Weisgerber's aggressive behavior exacerbated Ms. Banks' anxiety issues and other employees similarly feared confrontations with Mr. Weisgerber.

In the summer of 2013, Ms. Banks went to the emergency room for vertigo and anxiety and subsequently suffered from severe panic and anxiety episodes allegedly triggered by Mr. Weisgerber's behavior.  As a result, Ms. Banks was placed on leave from July 12, 2013, to July 25, 2013, for her medical issues.

When Ms. Banks returned to work at the end of July 2013, she, along with other employees, approached Ms. Banks' direct supervisor with complaints about Mr. Weisberger's behavior.  The issue was subsequently raised to Ms. Caroline Wyatt of Yoke's Human Resources Department, who spoke to Mr. Weisberger about the complaints and instructed him to attend an anger management class.  Mr. Weisberger refused and instead placed a sticker on his work inbox, reading "The

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 3

Offendinator." Ms. Banks states it was very apparent Mr. Weisberger knew which employees had lodged complaints, and his behavior became even more "crass and belittling."

At this point, Ms. Banks' anxiety "reached an all-time high." Ms. Banks was again treated for severe anxiety, panic, and vertigo and referred to a psychiatrist. Yoke's granted Ms. Banks leave but instructed her that she could not return to work until released by a psychiatrist. Ms. Banks was on leave between August 6, 2013, and September 17, 2013, and engaged in various forms of medical treatment. At some point during this period, Yoke's informed Ms. Banks that it would only keep her position open for twelve weeks. By September 18, 2013, Ms. Banks returned to work in her position as Deli Manager.

On December 4, 2013, an employee in the deli department placed an outdated container of macaroni salad on the deli's display shelf. Although Ms. Banks neither instructed her employees to engage in this practice nor was she aware of this specific occurrence, Ms. Banks was held responsible for the incident as Deli Manager. Yoke's employees escorted Ms. Banks off the premises, in view of other employees and customers, and placed Ms. Banks on an unpaid three-day suspension.

On the third day of Ms. Banks' suspension, Mr. Weisberger contacted Ms. Banks and instructed her to return to the store the following Monday at 6 a.m., out

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 4

of uniform. Ms. Weisberger provided no additional explanation. After an anxiety-ridden weekend, Ms. Banks arrived for her morning meeting and was informed that Yoke's was "letting her go due to extended absences and the salad incident."[2] Yoke's provided Ms. Banks with no paperwork or more detailed explanation as to why she was being terminated. Ms. Banks subsequently met with Ms. Wyatt, but without any resolution.

By the end of the week following her termination, Ms. Wyatt contacted Ms. Banks to set up a meeting. In their meeting, Ms. Wyatt informed Ms. Banks that there was an open position as a checker at Yoke's Airway Heights location.

---

[2] During her employment with Yoke's, Ms. Banks did not know of any employee terminated, or even disciplined, for placing an outdated item on display. In fact, Ms. Banks observed employees in another department knowingly placing outdated food for purchase by customers, conduct which Ms. Banks reported but which did not result in termination. Further, Ms. Banks had personally observed and reported other misconduct by Yoke's employees, such as employees giving and receiving unauthorized discounts or avoiding payment altogether. When Ms. Banks notified Mr. Weisberger of this conduct, he became "visibly upset" and "rude and unresponsive" to Ms. Banks. The conduct of these other employees similarly did not result in termination.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 5

1   Although the position paid substantially less, was part-time, and lacked benefits,

2   Ms. Banks inquired into the position.  Management informed Ms. Banks there was

3   no opening.  Ms. Banks continued to inquire as to openings for the next several

4   months.  During this period, the Airway Heights location hired four younger or less

5   experienced individuals as checkers.

6          Ms. Banks applied for a position at Barney's Harvest Foods, listing Yoke's

7   as a reference.  Barney's contacted Ms. Wyatt, requesting information about Ms.

8   Banks.  In response, Ms. Wyatt told Barney's, "We're not done with her yet."

9   Barney's never contacted Ms. Banks.  Unable to find work, Ms. Banks eventually

10  filed for unemployment benefits.

11         Ms. Banks and her husband, Mr. Steve Banks, commenced this action on

12  September 5, 2014, in Spokane County Superior Court, which Yoke's

13  subsequently removed to this Court on September 29, 2014.  ECF No. 1.

14  Plaintiffs' First Amended Complaint, filed September 26, 2014, asserts six causes

15  of action: (1) Disability Discrimination under the Revised Code of Washington

16  ("RCW") § 46.90; (2) Age Discrimination under RCW § 46.90; (3) Violation of

17  the Family Medical Leave Act and Washington Family Leave Act; (4) Blacklisting

18  under RCW § 49.44; (5) Intentional and Negligent Infliction of Emotional

19  Distress; and (6) Negligent Retention.  ECF No. 1 at 40-61.  Defendant now moves

20  to dismiss all claims within Plaintiffs' First Amended Complaint pursuant to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 6

Federal Rule of Civil Procedure 12(b)(6).  ECF No. 3.  For the reasons discussed

below, this Court grants Defendant's motion in part.

## DISCUSSION

### A. Legal Standard

A motion to dismiss for failure to state a claim tests the legal sufficiency of

the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To

withstand dismissal, a complaint must contain "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s]

of the elements of a cause of action will not do."  *Id.* at 555, 557.  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a plaintiff need not

establish a probability of success on the merits, he or she must demonstrate "more

than a sheer possibility that a defendant has acted unlawfully."  *Id.*

A complaint must also contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

standard "does not require detailed factual allegations, but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).  In assessing whether Rule 8(a)(2) has

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 7

been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. *See id.* at 675. The court should generally draw all reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Generally, in ruling upon a motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## B. Disability Discrimination

### 1. Failure to Accommodate

Defendant has moved to dismiss Plaintiffs' failure to accommodate claim for failure to plead the necessary elements of the claim. ECF No. 3 at 6-7.

The Washington Law Against Discrimination ("WLAD") requires an employer to make reasonable accommodations for an employee with a disability.[3]

---

[3] Washington courts look to federal discrimination laws for guidance in interpreting their own discrimination laws. *See e.g., Clarke v. Shoreline School Dist.*, 106 Wash.2d 102, 118 (1986).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 8

1    Under the WLAD, a plaintiff must prove that (1) she had a sensory, mental, or

2    physical impairment that is medically recognizable or diagnosable, exists as a

3    record of history, or is perceived to exist; (2) the impairment had a substantially

4    limiting effect upon her ability to perform the job such that accommodation was

5    reasonably necessary; (3) she was qualified to perform the essential functions of

6    the position; (4) she either gave the employer notice or the employer knew of the

7    impairment; and (5) upon notice, the employer failed to reasonably accommodate

8    the impairment.  Wash. Rev. Code § 49.60.040(7); *see Hale v. Wellpinit School*

9    *Dist. No. 49*, 165 Wash.2d 494, 502-03 (2009) (discussing the 2007 legislative

10   amendments to the WLAD, which redefined "disability"); *Goodman v. Boeing Co.*,

11   127 Wash.2d. 401, 408 (1995) (discussing the notice requirement); *Johnson v.*

12   *Chevron U.S.A., Inc.*, 159 Wash.App. 18, 28-29 (2010) (discussing the 2007

13   legislative amendments to the WLAD, which eliminated "medical necessity" as the

14   sole basis for a right to accommodation); *see also Riehl v. Foodmaker, Inc.*, 152

15   Wash.2d 138, 146 (2004) (laying out the elements of a WLAD claim applied by

16   Washington courts, pre-2007 legislative amendments).

17        Once an employee provides notice of her need for accommodation, the

18   employer has a duty to engage in an interactive process with the employee to

19   identify and implement appropriate reasonable accommodations.  *See Goodman*,

20   127 Wash.2d at 408 (noting that once an employee gives the employer notice of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 9

her disability, "[t]his notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations") (citation omitted). "A reasonable accommodation envisions an exchange between employer and employee, where each party seeks and shares information to achieve the best match between the employee's capabilities and available positions." *Frisino v. Seattle School Dist. No. 1*, 160 Wash.App. 765, 779 (2011) (citing *Goodman*, 127 Wash.2d at 409).

What constitutes a reasonable accommodation depends on the facts and circumstances of each case and generally is a question of fact for the jury. *Johnson*, 159 Wash.App. at 31. "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted); *Doe v. Boeing Co.*, 121 Wash.2d 8, 20 (1993) (noting an employer is not obligated "to offer the precise accommodation which [the employee] requests").

This Court finds Plaintiffs' failure to accommodate claim sufficiently satisfies Rule 8's pleading standard. Plaintiffs have pled the following allegations in support of their claim: (1) Ms. Banks' panic and anxiety disorder is a disability within the meaning of the WLAD; (2) her episodes of panic and anxiety substantially limited her ability to perform her position such that she required leave

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 10

1   to seek treatment; (3) based on her years of experience in the grocery industry, she

2   was qualified for her position as Deli Manager; (4) Yoke's was aware of Ms.

3   Banks' disability as early as 2007 when she suffered her first episode of panic and

4   anxiety and required leave to seek treatment; and (5) although Yoke's initially

5   granted Ms. Banks leave, she was first demoted and then eventually fired without

6   any evidence that Yoke's engaged in the interactive process with Ms. Banks to find

7   reasonable accommodations for her condition.  ECF No. 1 at 52-53.  Accordingly,

8   because Plaintiffs have sufficiently established a plausible claim for failure to

9   accommodate, this Court declines to dismiss this claim.

10            2.  Disparate Treatment

11          Defendant has moved to dismiss Plaintiffs' disparate treatment claim for

12   failure to sufficiently plead the necessary elements.  ECF No. 3 at 8.  Specifically,

13   Defendant asserts Plaintiffs failed to allege that Ms. Banks' disability was a

14   substantial factor in her termination.  *Id.*

15          The Washington Law Against Discrimination prohibits an employer from

16   discharging or otherwise discriminating against "any person because of . . . the

17   presence of any sensory, mental, or physical disability."  Wash. Rev. Code

18   § 49.60.180.  To prove a claim for disparate treatment under the WLAD, a plaintiff

19   must prove that her protected characteristic was a "substantial factor," meaning a

20   "significant motivating factor," in the employer's adverse employment decision.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 11

Wash. Rev. Code § 49.60.180(2); *Scrivener v. Clark College*, 334 P.3d 541, 545

(Wash. 2014) (en banc) (citing *Mackay v. Acorn Custom Cabinetry, Inc.*, 127

Wash.2d 302, 310 (1995)); *Riehl*, 152 Wash.2d at 149-50.

        At the summary judgment stage, a plaintiff may prove her claim by

presenting direct evidence of discriminatory intent or indirect evidence under the

familiar *McDonnell Douglas* burden-shifting framework to demonstrate an

inference of discrimination demonstrating the employer's discriminatory intent.

*Scrivener*, 334 P.3d at 545-46.[4]   However, as announced by the Supreme Court in

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), a plaintiff is not required to plead a

---

[4] To establish her prima face case, a plaintiff may show that she (1) belongs to a

protected class; (2) was qualified for the position; (3) was subject to an adverse

employment action; and (4) similarly situated employees outside the protected

class were treated more favorably.  *See McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802 (1973).  However, proof of these precise factors is not required.  *Id.*

at 802 n.13 ("[T]he prima facie proof required from respondent is not necessarily

applicable in every respect to differing factual situations.").  Rather, to establish a

prima facie case, a plaintiff merely "must offer evidence that gives rise to an

inference of unlawful discrimination."  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d

1151, 1156 (9th Cir. 2010) (citations omitted).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S

MOTION TO DISMISS ~ 12

prima facie case under *McDonnell Douglas*, an evidentiary standard, in order to survive a motion to dismiss.  Rather, the ordinary pleading standard applies. *Swierkiewicz*, 534 U.S. at 511-14 (finding that plaintiff gave defendant sufficient notice of his national origin employment discrimination claim where his complaint "detailed events leading to his termination, provided relevant dates, and included the ages and nationalities of the relevant persons involved with his termination"). Thus, a plaintiff alleging a claim for disparate treatment need only present sufficient factual allegations asserting that the employer's adverse employment decision was motivated by plaintiff's protected characteristic.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (discussing the pleading standards for a disparate treatment claim).

This Court finds Plaintiffs' disparate treatment claim has sufficiently satisfied Rule 8's pleading standard.  Plaintiffs assert that Ms. Banks "was unlawfully and continually discriminated against by Yoke's for the symptoms of her medical condition and accompanying treatment" and that "Yoke's unfairly discriminated against Ms. Banks on the basis of her medical disability."  ECF No. 1 at 53.

Regarding Ms. Banks' demotion, Plaintiffs alleged the following facts in support of their assertion that "anxiety issues were the cause of [Ms. Banks'] demotion": (1) Ms. Banks has "an excellent employment record, was never

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 13

previously disciplined or written up, and never received negative employee evaluations; (2) Ms. Banks suffered her first episode of panic and anxiety in 2007; (3) Yoke's first became aware of Ms. Banks' condition when it granted Ms. Banks' leave; and (4) Yoke's subsequently reassigned Ms. Banks to a new location and demoted her from Corporate Assistant Deli Supervisor to Deli Manager, stating that Ms. Banks' previous position was "no longer needed."  ECF No. 1 at 42-43, 52-53.

Regarding Ms. Banks' termination, Plaintiffs alleged the following facts in support of their assertion that "Yoke's unfairly discriminated against Ms. Banks on the basis of her medical disability": (1) Ms. Banks has "an excellent employment record, was never previously disciplined or written up, and never received negative employee evaluations; (2) Ms. Banks took several weeks of leave in 2013 after she was hospitalized for an anxiety attack; (3) Yoke's was aware of Ms. Banks' condition, which had previously necessitated leave for treatment; (4) Yoke's informed Ms. Banks it would only keep her position open for twelve weeks; (5) Yoke's discharged Ms. Banks less than three months after she returned from work from extended leave; and (6) Ms. Banks knew of other employees, employees without her medical condition and need for medical leave, who engaged in similar conduct and were not similarly discharged.  ECF No. 1 at 45-49, 52-53.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 14

1    Thus, considering Plaintiffs have pled sufficient facts to state a prima facie

2    case of discrimination, Plaintiffs have undoubtedly satisfied Rule 8(a)'s less

3    burdensome pleading standard for a claim of disparate treatment.  *See Sheppard*,

4    694 F.3d at 1050 n.2 (noting that a plaintiff in an employment discrimination case

5    is not required to plead a prima facie case of discrimination but will nevertheless

6    survive a motion to dismiss if she does) (citing *Swierkiewicz*, 534 U.S. at 508-11).

7    Accordingly, this Court declines to dismiss this claim.

8    **C. Age Discrimination**

9    Defendant moves to dismiss Plaintiffs' age discrimination claim for failure

10   to sufficiently plead the necessary elements.  Specifically, Defendant asserts

11   Plaintiffs failed to allege that Ms. Banks' age was a substantial factor in her

12   termination.  ECF No. 3 at 8-9.

13   Under the WLAD, an employer may not discharge or otherwise discriminate

14   against any individual on the basis of age if the individual is within the protected

15   class; that is, between the ages of 40 and 70.  Wash. Rev. Code. § 49.60.180;

16   *Scrivener*, 334 P.3d at 545.  To prove her claim, a plaintiff must prove that age was

17   a "substantial factor," that is, a "significant motivating factor," in the employer's

18   adverse employment action.  *Scrivener*, 334 P.3d at 545.  Like disparate treatment

19   claims, a plaintiff need not state a prima facie case of discrimination; rather, a

20   plaintiff need only present sufficient factual allegations asserting that the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 15

1  employer's adverse employment decision was motivated by plaintiff's protected

2  characteristic. *Sheppard*, 694 F.3d at 1050 n.2 (noting that a plaintiff in a federal

3  age discrimination case is not required to plead a prima facie case of discrimination

4  but will nevertheless survive a motion to dismiss if she does) (citing *Swierkiewicz*,

5  534 U.S. at 508-11).

6          This Court finds Plaintiffs' age discrimination claim sufficiently satisfies

7  Rule 8's pleading standard.  Plaintiffs have sufficiently pled facts that, if proven,

8  would establish that "Ms. Banks' age was a factor in [Yoke's] decision to

9  terminate her from employment at Yoke's Fresh Markets and to not rehire her": (1)

10 Ms. Banks is 46 years old; (2) "Ms. Banks maintained an excellent employment

11 record, was never previously disciplined or written up, and never received negative

12 employee evaluations;" (3) Ms. Banks was terminated from Yoke's North Foothills

13 location and subsequently not chosen for rehire at Yoke's Airway Heights location;

14 (4) Yoke's replaced Ms. Banks' position at the North Foothills location with a

15 younger individual; (5) Yoke's hired several younger employees, instead of Ms.

16 Banks, at the Airway Heights location.  ECF No. 1 at 41, 49, 51, 53-54.  Although

17 Defendant is correct in noting that Plaintiffs failed to explicitly state that Ms.

18 Banks' age was a *substantial* factor in Yoke's employment decisions, this slight

19 omission does not detract from the sufficient factual allegations Plaintiffs alleged

20 in support of their claim.  Accordingly, this Court declines to dismiss this claim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 16

**D. Family Medical Leave Act and Washington Family Leave Act**

Defendant moves to dismiss Plaintiffs claims[5] under the Family Medical Leave Act and Washington Family Leave Act, asserting that Ms. Banks was never denied leave. ECF No. 3 at 10. The Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, *inter alia*, protects an employee's right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). "The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. It simply guarantees that

---

[5] Although Plaintiffs First Amended Complaint does not explicitly state which provisions of the Family Medical Leave Act and Washington Family Leave Act they are invoking, this Court recognizes that a plaintiff need not perfectly state the legal theory under which she seeks relief in order to support the claim asserted. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346-47 (2014) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.") (quoting 5 Wright & Miller, § 1219, p. 277-78 (3d ed. 2002)). Thus, this Court construes Plaintiff's Third Cause of Action as one for both interference and retaliation.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 17

an employee's taking leave will not result in a loss of job security or in other

adverse employment actions." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th

Cir. 2003) (citing 29 U.S.C. § 2614(a)(3)(B)).

Courts have recognized two distinct causes of action under the FMLA to

protect these substantive rights.  Under section 2615(a)(2), known as the

"retaliation" or "discrimination" claim, it is "unlawful for any employer to

discharge or in any manner discriminate against any individual for opposing any

practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2); *Bachelder*,

259 F.3d at 1124.  Under section 2615(a)(1), known as the "interference" or

"entitlement" claim, it is "unlawful for any employer to interfere with, restrain, or

deny the exercise of or the attempt to exercise" the substantive rights guaranteed

by the FMLA.  29 U.S.C. § 2615(a)(1); *Sanders v. City of Newport*, 657 F.3d 772,

777-78 (9th Cir. 2011).  "[E]mployer actions that deter employees' participation in

protected activities constitute 'interference' or 'restraint' with the employees'

exercise of their rights." *Bachelder*, 259 F.3d at 1124; *see* 29 C.F.R. § 825.220(b)

(stating that "interference" includes "not only refusing to authorize FMLA leave,

but discouraging an employee from using such leave").  Accordingly, the FMLA

prohibits an employer from the use of FMLA-protected leave as a "negative

factor" in an employment decision.  29 C.F.R. § 825.220(c) ("[E]mployers cannot

use the taking of FMLA leave as a negative factor in employment actions, such as

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 18

1    hiring, promotions, or disciplinary actions."); *Xin Liu*, 347 F.3d at 1136;

2    *Bachelder*, 259 F.3d at 1124.  An employer violates this "prohibition on interfering

3    with or restraining employee rights by engaging in activity that tends to chill an

4    employee's freedom to exercise his rights."  *Bachelder*, 259 F.3d at 1123 (citation

5    and internal quotation marks omitted).

6        The Washington Family Leave Act ("WFLA"), RCW § 49.78.220, contains

7    similar provisions.  Under the WFLA, an employee may take up to 12 weeks of

8    family leave, during any twelve-month period, for a "serious health condition."

9    Wash. Rev. Code § 49.78.220.  Further, "[i]t is unlawful for any employer to . . .

10    [i]nterfere with, restrain, or deny the exercise of, or the attempt to exercise, any

11    right provided under this chapter." *Id.* § 49.78.300(1)(a). "The Washington Family

12    Leave Act mirrors its federal counterpart and provides that courts are to construe

13    its provisions in a manner consistent with similar provisions of the FMLA."

14    *Crawford v. JP Morgan Chase*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013)

15    (citation and internal quotation marks omitted).

16        This Court finds Plaintiffs' First Amended Complaint has sufficiently

17    satisfied Rule 8's pleading standard regarding their interference and retaliation

18    claims.  Plaintiffs allege the following facts in support of their FMLA and WFLA

19    claims: (1) Yoke's is a covered employer under the FMLA and WFLA; (2) Ms.

20    Banks' is an employee eligible for leave under the FMLA and WFLA; (3) Ms.

1    Banks was demoted after taking leave for her medical issues in 2007; (4) while on

2    medical leave between August and September 2013, Yoke's informed Ms. Banks it

3    would only keep her position open for twelve weeks, which Ms. Banks interpreted

4    as discouraging her from taking leave; and (5) Ms. Banks was placed on unpaid

5    suspension and ultimately terminated less than three months after taking extended

6    medical leave.  ECF No. 1 at 42, 46, 49, 54-55.  Accordingly, because Plaintiffs

7    have asserted sufficient allegations that Ms. Bank' taking of medical leave may

8    have ultimately resulted in her termination this Court declines to dismiss Plaintiffs'

9    FMLA and WFLA claims.

10    **E.  Blacklisting**

11    Defendant moves to dismiss Plaintiffs' blacklisting claim for failure to state

12    a plausible claim.  ECF No. 3 at 11-13.  Under Wash. Rev. Code § 49.44.010,

13    Washington's criminal "blacklisting" statute, it is unlawful *inter alia* to

14    wilfully and maliciously, send or deliver, or make or cause to be made, for
       the purpose of being delivered or sent, . . . any paper, letter, or writing, . . .

15    or publish or cause to be published any statement for the purpose of
       preventing any other person from obtaining employment in this state or

16    elsewhere, . . . . or who shall wilfully and maliciously make or issue any
       statement or paper that will tend to influence or prejudice the mind of any

17    employer against the person of such person seeking employment . . . .

18    Wash. Rev. Code § 49.44.010.  Although a criminal statute, the blacklisting statute

19    provides sufficient basis for a civil cause of action.  *See Moore v. Commercial*

20    *Aircraft Interiors*, 168 Wash.App. 502, 515 (2012) (citing *Dick v. N. Pac. Ry. Co.*,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 20

86 Wash. 211, 221 (1915) (holding that the blacklisting statute, "though specifically punishable only by criminal prosecution, is a sufficient basis for a civil action in favor of the person injured"). The plain language of the statute makes it abundantly clear that a plaintiff must at a minimum allege sufficient facts to show that a defendant "published the grounds for [her dismissal] or otherwise circulated h[er] name to prospective employers *for the purpose of preventing plaintiff from securing employment*." *Cooper v. Univ. of Wash.*, 2007 WL 3356809, at *8 (W.D. Wash. Nov. 8, 2007) (emphasis added); *see* Wash. Rev. Code § 49.44.010.

Plaintiffs have alleged that Ms. Wyatt's statement, "We're not done with her yet," to Barney's Harvest Foods and Yoke's assertion to the Employment Security Department that it was Ms. Banks who placed the outdated salad out for display support Plaintiffs' blacklisting claim. ECF No. 4 at 14-15. Defendant asserts that these statements do not give rise to a plausible blacklisting claim. ECF No. 3 at 11-13.

This Court discerns no plausible basis that the purpose of these two statements was to publish or circulate information to prospective employers in order to prevent Ms. Banks from securing employment. Plaintiffs have not provided any factual allegations that Yoke's statement to the Employment Security Department was even communicated to a prospective employer or at least to someone who communicates with prospective employers; thus, Plaintiff fail to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 21

show how this assertion was published for the purpose of preventing Ms. Banks

from securing other employment.  Second, even relying only on the portion of the

statute prohibiting "any statement" that would "tend to influence or prejudice the

mind of any employer against the person seeking employment," Plaintiffs have not

sufficiently alleged how Ms. Wyatt's vague and ambiguous statement to Barney's,

"We're not done with her yet," would tend to influence or prejudice any employer

against hiring Ms. Banks.  Accordingly, because Plaintiffs have failed to plead

sufficient facts to support a plausible blacklisting claim under RCW § 49.44.010,

this claim is dismissed.

## F.  Emotional Distress

### 1.  Intentional Infliction of Emotional Distress

Defendant moves to dismiss Plaintiffs' claim for intentional infliction of

emotional distress for failure to state a claim.  To establish the tort of outrage, a

plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or

reckless infliction of emotional distress, and (3) severe emotional distress on the

part of the plaintiff."  *Reid v. Pierce Cnty.*, 136 Wash.2d 195, 202 (1998).  It is not

enough that that the defendant acted with tortious or criminal intent, nor will

liability extend "to mere insults, indignities, threats, annoyances, petty oppressions,

or other trivialities."  *Grimsby v. Samson*, 85 Wash.2d 52, 59 (1975).  Rather, the

conduct must be "so outrageous in character, and so extreme in degree, as to go

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 22

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* The question of whether defendant's conduct was sufficiently outrageous is normally left to the jury. *Dicomes v. State*, 113 Wash.2d 612, 630 (1989). However, "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently outrageous to result in liability." *Id.* Factors the court may consider in determining whether the conduct is sufficiently outrageous include the following: the position occupied by defendant; whether the plaintiff was particularly susceptible to emotional distress and if defendant knew that fact; the degree of the severity of the emotional distress as opposed to annoyance, inconvenience or embarrassment; and whether the actor was aware of "a high probability" that his conduct would cause severe emotional distress and nonetheless proceeded in "conscious disregard" of it. *Phillips v. Hardwick*, 29 Wash.App. 382, 388 (1981).

Here, Plaintiffs base their claim for outrage on the following factual allegations: (1) Mr. Weisgerber and Yoke's knew Ms. Banks was particularly susceptible to emotional distress; (2) Mr. Weisgerber's "explosive anger outbursts" and aggressive behavior, which included "kicking cans, yelling, swearing, refusing to listen to Ms. Banks," caused Ms. Banks such stress and anxiety that she had to seek medical treatment; (3) Yoke's failed to control Mr. Weisgerber's conduct; (4) Yoke's had Ms. Banks escorted off the premises, in view of other employees and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 23

customers, after she was placed on suspension; and (5) Yoke's "went [to] great

lengths to roadblock Ms. Banks from attaining further employment." ECF Nos. 1

at 56-57; 4 at 17-18.  Even under the high bar set by the Washington Supreme

Court, Plaintiff has not made sufficient allegations supporting a tort of outrage for

her termination.  Even assuming all Plaintiffs' factual allegations are true, the

Court does not find conduct "utterly intolerable in a civilized community."

*Grimsby*, 85 Wash.2d at 59.  Accordingly, this claim is properly dismissed.

### 2. <u>Negligent Infliction of Emotional Distress</u>

Defendant moves to dismiss Plaintiffs' claim for negligent infliction of

emotional distress for failure to state a claim. To establish the tort of negligent

infliction of emotional distress, a plaintiff must show that (1) the defendant

engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress;

and (3) the defendant's negligent conduct was the cause of the plaintiff's serious

emotional distress.  *See Hegel v. McMahon*, 136 Wash.2d 122, 135 (1988).  "As

with any claim sounding in negligence, where a plaintiff brings suit based on

negligent infliction of emotional distress 'we test the plaintiff's negligence claim

against the established concepts of duty, breach, proximate cause, and damage or

injury." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash.2d 233, 243 (2001).  In

addition to the traditional elements of negligence, a plaintiff must show an

"objective symptomology" that is susceptible to a medical diagnosis.  *Kloepfel v. Bokor*, 149 Wash.2d 192, 196-97 (2003) (en banc).

The Washington courts have repeatedly noted the limited place negligent infliction of emotional distress claims have in the employment context.  As the Washington Supreme Court aptly stated, "[t]here is no duty for an employer to provide employees with a stress free workplace."  *Snyder*, 145 Wash.2d at 243.  "[A]bsent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes."  *Id.* at 244 (citing *Bishop v. State*, 77 Wash.App. 228, 244 n.5 (1995)); *see also Lords v. N. Auto. Corp.*, 75 Wash.App. 589, 595 (1994) (absent a "clear mandate of public policy," an employee has no cause of action against his or her employer for negligent infliction of emotional distress when at-will employment is terminated); *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wash.App. 212 (1996) (holding employers have no duty to avoid infliction of emotional distress on employees when responding to employment issues).  Rather, an employer owes a duty only to those who are foreseeably endangered by its conduct and only as to those risks or hazards whose likelihood made the conduct unreasonably dangerous.  *Snyder*, 145 Wash.2d at 245 ("Conduct is unreasonably dangerous when its risks outweigh its utility.") (citation and internal quotation marks omitted).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 25

Here, Plaintiffs' base their negligent infliction of emotional distress claim on the same allegations detailed above supporting Plaintiff's outrage claim. Although Plaintiffs concede that most of the alleged conduct giving rise to the claim occurred in the workplace, Plaintiffs highlight that Mr. Weisgerber's behavior was not done in furtherance of work-related topics and Yoke's was aware of Ms. Banks' susceptibility to emotional injury. ECF Nos. 1 at 54-55; 4 at 15-16. Nonetheless, this Court finds Plaintiffs have failed to demonstrate Yoke's owed Ms. Banks a duty and subsequently breached that duty. Because employers do not owe employees a duty to be free from a stress-free work environment, *see Snyder*, 145 Wash.2d at 243, Plaintiffs' allegations do not support a cause of action for this tort. Accordingly, this claim is properly dismissed.

**G. Negligent Retention**

Defendant moves to dismiss Plaintiffs' claim for negligent retention. To establish a claim for negligent supervision, a plaintiff must demonstrate the following: "(1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees." *Briggs v. Nova Servs.*, 135 Wash.App. 955, 966-67 (2006), *aff'd*, 166 Wash.2d 794 (2009). Thus, at a minimum, a cause of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 26

1  action for negligent supervision requires a plaintiff to show that an employee acted

2  outside the scope of his or her employment.  *Niece v. Elmview Grp. Home*, 131

3  Wash.2d 39, 48 (1997) ("Even where an employee is acting outside the scope of

4  employment, the relationship between employer and employee gives rise to a

5  limited duty, owed by an employer to foreseeable victims, to prevent the tasks,

6  premises, or instrumentalities entrusted to an employee from endangering others.

7  This duty gives rise to causes of action for negligent hiring, retention, and

8  supervision."); *Rodriguez v. Perez*, 99 Wash.App. 439, 451 (2000) ("If an

9  employee conducts negligent acts outside the scope of employment, the employer

10  may be liable for negligent supervision."); *Gilliam v. Dep't of Soc. & Health*

11  *Servs.*, 89 Wash.App. 569, 584-585 (1998) ("When an employee causes injury by

12  acts beyond the scope of employment, an employer may be liable for negligently

13  supervising the employee.").

14      Here, Plaintiffs fault Yoke's for negligently retaining Mr. Weisgerber

15  despite his known aggressive behavior and its effect on Ms. Banks.  ECF No. 1 at

16  57-58.  This Court finds Plaintiffs' First Amended Complaint contains no

17  allegations that Mr. Weisgerber's tortious conduct was performed "outside the

18  scope of employment."  Quite the opposite, Plaintiffs' allege that "[a]t all times

19  relevant, Mr. Weisgerber acted within the scope of his employment and in

20  furtherance of the business of Yokes' Fresh Markets in his position as store

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 27

1    manager." *Id.* at 43.  Accordingly, because Plaintiffs' have failed to plead an

2    adequate claim for negligent retention, this claim is properly dismissed.

3        **H. Leave to Amend**

4        Even when a complaint fails to state a claim for relief, "[d]ismissal without

5    leave to amend is improper unless it is clear that the complaint could not be saved

6    by an amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).  The

7    standard for granting leave to amend is generous. See Fed. R. Civ. P. 15(a)(2)

8    ("The court should freely give leave when justice so requires.").  The court

9    considers five factors in assessing the propriety of leave to amend—bad faith,

10   undue delay, prejudice to the opposing party, futility of amendment, and whether

11   the plaintiff has previously amended the complaint.  *United States v. Corinthian*

12   *Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

13       This Court finds amendment is proper.  First, the Court finds no indication

14   of bad faith or undue delay.  Second, this Court finds no prejudice to the opposing

15   party at this early stage in the proceedings; Defendant has not yet filed its Answer.

16   Third, Plaintiffs have previously amended their Complaint, which factor weighs

17   against amendment.  Finally, this Court finds amendment would not be futile.

18   Futility is established only if the complaint "could not be saved by any

19   amendment." *Id.* (internal citations omitted).  At this early stage of the

20   proceedings, the Court can conceive of additional facts that could provide plausible

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 28

support for Plaintiffs' claims. *See id*. Consequently, because the factors weigh in favor of amendment, leave to amend Plaintiff's First Amended Complaint is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Dismiss (ECF No. 3) is **GRANTED in part** and **DENIED in part**. Defendant's Motion is **GRANTED** as to the Fourth, Fifth, and Sixth Causes of Action in Plaintiffs' First Amended Complaint. As indicated herein, Defendant's Motion as to all other claims is **DENIED**.

2.  Plaintiff is **GRANTED** leave to file an amended complaint within **thirty (30) days** of the entry of this order.

3.  Pursuant to Federal Rule of Civil Procedure 81(c), this Court orders that any demand for a jury trial be filed within **thirty (30) days** of the entry of this order.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** December 16, 2014.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 29